UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                      Plaintiff,                         No. 1:18-CR-00167-6

              vs.                              Hon. Paul J. Maloney
                                         United States District Judge

YVETTE SHEREE BROWN,

                      Defendant.

_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VARIANCE AND SENTENCING MEMORANDUM

The United States, by and through its attorneys Andrew Byerly Birge, United States Attorney, and Kate Zell and Daniel McGraw, Assistant United States Attorneys, submits this Response to Defendant's Motion for Variance and Sentencing Memorandum. The government respectfully requests that the Court consider the applicability of the Career Offender enhancement following the Sixth Circuit's decision in *Havis*. Additionally, the government requests that the Court deny the defendant's request for a minimal role adjustment. With respect to drug quantity, the government believes the defendant is directly responsible for between 3.5 kilograms and 5 kilograms of cocaine, for a base offense level of 28. Presently the PSR reflects a base offense level of 30.

Pursuant to the government's plea agreement with the defendant, (R.602: Plea Agreement, PageID.2062), prior to the time of sentencing the government will move to dismiss the Amended Information and Notice of Prior Felony Drug Conviction that

was filed under 21 U.S.C. § 851, (R.483: 851 Notice, PageID.1532), which would increase the defendant's mandatory minimum and maximum sentences if not dismissed. However, as explained below, due to the circumstances of the defendant's cooperation with the government, the government will not be filing a motion pursuant to Section 5K1.1 of the United States Sentencing Guidelines ("U.S.S.G.").

## I.    Background

On May 24, 2018, the defendant was charged by a complaint alleging that she conspired to possess with intent to distribute and to distribute cocaine and crack cocaine. The defendant had an initial appearance on May 29, 2018, and a bond hearing on June 1, 2018, after which she was released on bond. On July 25, 2018, the grand jury returned an indictment charging the defendant with one count of conspiring to possess with intent to distribute and to distribute more than 500 grams of cocaine and a quantity of cocaine base, and one count of possessing with intent to distribute cocaine base. (R.172: Indictment, PageID.469–507.)

Approximately nine months after the defendant's first court appearance in this case, she participated in a proffer meeting with the government, accompanied by her attorney.[1] During that meeting, the defendant provided information about several coconspirators including Howard Mayfield, Craig James, Shamekia Liptrot, Martin Dukes, Donald Gardner, Troy Lewis, and Ryan Brown. Ryan Brown is the defendant's brother. At no time during the defendant's initial proffer with the government did she

---

[1] The report of the defendant's proffer with the government was inadvertently not provided to the Probation Office and thus is not summarized in the PSR. It has since been provided to defense counsel and the Probation Office and will be available to the Court at sentencing.

provide information about codefendant Trebarius McGee's involvement cocaine trafficking.

Following the defendant's proffer, the parties entered into a plea agreement containing cooperation provisions, which was filed on March 27, 2019. (R.602: Plea Agreement, PageID.2061–2062.) The defendant agreed to "fully cooperate" with the government, including by "providing investigators with a full, complete, and truthful statement concerning the Defendant's knowledge of any and all criminal activity of which she is aware; [and] truthfully answering investigators' questions . . . ." (*Id.*) The defendant pled guilty, pursuant to the plea agreement, on April 24, 2019. (R.1006: PSR, ¶ 8, PageID.6483.)

In early September 2019, as the government was preparing for trial against several codefendants including Ryan Brown and Trebarius McGee (who had not yet entered a guilty plea), Kentwood Police Officer Danny Wills[2] listened to a September 3, 2018, jail call between the defendant and Ryan Brown, during which call the defendant was also talking on a second telephone line with codefendant Trebarius McGee, a/k/a "Smurf," "Murf," and "Stutters." The defendant had McGee on speaker phone so that his voice was audible. The voices of all three codefendants were recognizable by Officer Wills. At the outset of the call Ryan Brown asked the defendant if it was "Stutters" on the other line and the defendant said yes. The content of the call made clear that the defendant knew Trebarius McGee personally.

---

[2] Officer Wills was one of the lead law enforcement officers during the active investigation of this case.

After hearing the jail call involving the defendant, Ryan Brown, and Trebarius McGee, the government scheduled an in-person meeting with the defendant and her attorney. The parties met on September 12, 2019. During that meeting, investigators asked the defendant directly and specifically about any knowledge she had respecting McGee's cocaine dealing. The defendant adamantly denied knowing anything about McGee's cocaine dealing. She denied ever having dealt with McGee for cocaine.

Following the September 12, 2019, meeting with the defendant and her attorney, investigators conducted an in-depth review of the contents of Ryan Brown's cell phone, in preparation for trial. Attached as Exhibit 1 are text/SMS messages between the defendant and Ryan Brown, extracted from Ryan Brown's phone. The government's review revealed that the defendant lied to government about McGee during the September meeting. As it turns out, McGee was supplying the defendant with cocaine when Howard Mayfield was out of cocaine—following the interception of eight kilograms of cocaine in Arkansas on March 13, 2018. And McGee continued to supply the defendant during the conspiracy. Additionally, Ryan Brown's cell phone revealed to investigators that the defendant and Ryan Brown worked together at times in their cocaine dealing pursuits, which the defendant failed to tell investigators during her proffer meetings. And the defendant got cocaine from McGee to provide to Ryan Brown during the conspiracy. For example, Ryan Brown and the defendant had the following text exchange on March 16, 2018—while Mayfield was out of cocaine:

| Ryan Brown: | Who you finna gettin yo work from cause howie out for a lil while |
| Ryan Brown: | Be* |
| Yvette Brown: | I be fucking with Murf [McGee] |
| Ryan Brown: | Tomorrow can you grab me a zone [an ounce of cocaine, from McGee] |
| Yvette Brown: | Yeah |
| Ryan Brown: | Okay |

The defendant's lies about codefendant McGee were material and detrimental to the government. As of September 12, 2019, McGee had not pled guilty and was proceeding to trial. It would have been extremely beneficial to the government to know that the defendant had been buying cocaine from McGee during the time of the conspiracy. McGee ultimately pled guilty on October 3, 2019.  Notably, McGee pled guilty in this case only after he was arrested on September 16, 2019, on new cocaine charges in the state. Had the defendant been truthful with the government about McGee throughout her proffers, the government could have avoided significant trial preparation relating to McGee. Moreover, the fact that the defendant lied to the government outright about a codefendant, shortly before trial, significantly compromised the government's ability to call the defendant as a witness.

Ultimately, the defendant's purported cooperation with the government was not truthful, complete, or reliable. Accordingly, the government is not requesting a substantial assistance reduction under U.S.S.G. § 5K1.1.

## II.    Presentence Report

The Final PSR attributed a drug quantity of 5.029 kilograms of cocaine to the defendant. (R.1006: PSR ¶ 99, PageID.6535.) In preparation for sentencing, the government conducted a thorough review of evidence respecting the drug quantity

attributable to the defendant and, based on that review, believes that the defendant is directly responsible for between 3.5 kilograms and 5 kilograms of cocaine, for an offense level of 28.[3] The primary difference between the 5.029 kilogram quantity in the PSR and the government's current calculation is based on evidence reflecting that, on May 17, 2018, Howard Mayfield obtained only one half kilogram of cocaine from Craig James (through the defendant as an intermediary), not one kilogram.[4] Attached as Exhibit 2 is a detailed breakdown of the quantities of cocaine directly attributable to the defendant.

The Final PSR applied the Career Offender provision of the guidelines to the defendant pursuant to U.S.S.G. § 4B1.1(b)(2). (R.1006: PSR ¶¶ 146, 191, 223, PageID.6545, 6557, 6563.) As a result, the PSR scored the defendant at a total offense level of 31 (following reductions for acceptance of responsibility) and a criminal history category of VI. (*Id.* ¶ 223, PageID.6563.) The resulting guideline imprisonment range is 188 to 235 months. (*Id.* ¶ 223, PageID.6563.)

## III.   Career Offender Guideline

There are two issues respecting the applicability of the Career Offender guidelines to the defendant. The first is whether U.S.S.G. § 4B1.1 applies to a

---

[3] The government's calculation includes a half pound of marijuana that Howard Mayfield obtained through Craig James on May 17, 2018, with the defendant acting as an intermediary. The converted drug weight calculation of all the cocaine and marijuana directly attributable to the defendant is 939.9 kilograms, *i.e.*, Offense Level 28.

[4] Mr. James testified at trial against codefendants in this case that he could not recall whether he provided Mayfield with a half kilogram or a kilogram of cocaine on May 17, 2018. The government has concluded that it was likely a half kilogram on May 17, 2018, based on calculations of quantities Mayfield distributed between May 17 and May 19, when Mayfield obtained additional cocaine from James.

defendant like Ms. Brown who is convicted of conspiring to distribute and possess with intent to distribute 500 grams or more of cocaine and a quantity of crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(ii), and 841(b)(1)(C). The second is whether the defendant has two prior felony convictions of either a crime of violence of a controlled substance offense for purposes of U.S.S.G. § 4B1.1

### A. Inapplicability of Career Offender Guideline for Conspiracy Offenses Under 21 U.S.C. § 846 and Court's Authority to Vary or Depart Upward Based on Policy Disagreement with the Guidelines or 18 U.S.C. § 3553(a) Factors

On June 6, 2019, in the case of *United States v. Havis*, 927 F.3d 382, 383 (6th Cir.), *reconsideration denied*, 929 F.3d 317 (6th Cir. 2019), the Sixth Circuit invalidated the Guidelines commentary that defined a controlled substance offense to include conspiracies and attempts to commit such an offense, holding that the Sentencing Commission had overstepped its authority by adding to the guideline text rather than interpreting it. 927 F.3d at 386-87. On July 12, 2019, the Sixth Circuit denied the government's request for the Court to reconsider this ruling. *United States v. Havis*, No. 17-5772, DE 70-2 (filed July 12, 2019). The Department of Justice has declined to petition the Supreme Court of the United States for a writ of certiorari, but the issue is still pending in other circuits.

Based on the Sixth Circuit's binding precedent in *Havis*, the government's position is that the Career Offender Guideline in U.S.S.G. § 4B1.1 is technically ***inapplicable*** to defendants who are convicted of conspiring to commit drug offenses in violation of 21 U.S.C. § 846. That being said, the government maintains its position that *Havis* was wrongly decided.

Moreover, the Court at sentencing may vary from the Guidelines based on a categorical policy-based disagreement with them. *United States v. Herrera-Zuniga*, 571 F.3d 568, 583–84 (6th Cir. 2009) (citing *Spears v. United State*s, 555 U.S. 261 (2009), *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 575–76, 169 L.Ed.2d 481 (2007) ("[A]s a *general matter,* 'courts may vary from the Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines."). Thus, even though the Career Offender provision does not technically apply when the instant conviction is for conspiring to commit a felony controlled substance offense, *Herrera-Zuniga*, *Spears*, and *Kimbrough* allow the sentencing Court to vary from the Guidelines—in this case apply the Career Offender provision where it otherwise does not apply—if it does so based on an articulated policy-based disagreement with the Guidelines.

For example, the Court might believe that the Sentencing Commission created an arbitrary distinction between the types of felony controlled substance offenses by excluding conspiracy and attempt offenses from those that trigger the Career Offender provision—especially where conspiracy and attempt offenses are subject to the same statutory penalties under 21 U.S.C. § 846. The defendant's case is an example of such an arbitrary distinction: had the defendant pled to Count 9 of the Indictment—possession with intent to distribute a quantity of cocaine base on April 7, 2018—she would be subject to the Career Offender guideline following *Havis*. But under the Sixth Circuit's post-*Havis* framework as it presently stands, a conviction for possession with an intent to distribute an unknown quantity of cocaine base on a

single occasion is treated more seriously than a conviction for conspiring to distribute and possess with intent to distribute over 500 grams of cocaine over an extended period of time. Or the Court may believe as a policy matter that there is a "disproportionate and unjust effect," *Kimbrough*, 552 U.S. at 93, in applying the Career Offender provision to only those defendants who complete felony controlled substances offenses and not to those defendants who conspire to commit the very same offenses.

Finally, the Court at sentencing may decide, as a matter of the sentencing factors set forth in 18 U.S.C. § 3553(a), to impose the equivalent of a Career Offender enhancement by departing or varying upward. *See, e.g.*, *United States v. Hardy*, 643 F.3d 143, 158 (6th Cir. 2011) (holding that the "district court [ ] did not act unreasonably in sentencing Hardy as though he were a career offender" based on his criminal history); *cf. United States v. Embry*, 728 Fed. Appx. 544, 549 (6th Cir. 2018) (unpublished) (holding that sentencing court did not err in imposing an above-Guidelines sentence where articulated that the 144-month sentence was appropriate "with or without the career offender" enhancement.).

The government raises this issue for the Court, and provides the following Guidelines calculations as a reference point. The government recommends that, in an abundance of caution, the Court make findings respecting the guidelines under both paradigms—with and without the application of the Career Offender provision.

| **With** Career Offender Enhancement (Criminal History VI) | | **Without** Career Offender Enhancement (Criminal History IV) | |
|---|---|---|---|
| Base (§ 4B1.1(b)(1)) | 34 | Base (§ 2D1.1(a)(5)) | 28 |
| § 3E1.1(a) | - 2 | § 3E1.1(a) | - 2 |
| § 3E1.1(b) | - 1 | § 3E1.1(b) | - 1 |
| Total | 31 | Total | 25 |
| Guidelines | 188–235 months | Guidelines | 84–105 months |

**B.    Defendant Has at Least Two Prior Felony Convictions of Either a Crime of Violence or a Controlled Substance Offense.**

As discussed above, following *Havis*, the Career Offender provision is not applicable to defendants who are convicted of 21 U.S.C. § 846. Notwithstanding *Havis*, the Court may decide to categorically vary and apply the Career Offender guideline to the defendant, or it may decide that the sentencing factors in 18 U.S.C. § 3553(a) warrant a sentence that is comparable to a Career Offender sentence. Importantly, had the defendant been convicted of Count 9 of the Indictment— possession with intent to distribute a quantity of cocaine—the Career Offender guideline would have applied because the defendant has two qualifying felony convictions: one for a crime of violence and one for a controlled substance offense.

**1.    Defendant's 2008 Unarmed Robbery Conviction Is an Enumerated Crime of Violence**

On March 17, 2018, the defendant was convicted in the 17th Circuit Court of Michigan of unarmed robbery in violation of Michigan Compiled Law § 750.530. (R.1106: PSR, PgeID.6554.) The defendant was sentenced to a term of 3 to 15 years in prison. (*Id.*)

Section 4B1.2(a)(1)of the guidelines explicitly states that a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another" is as a "crime of violence." The next subparagraph states that the

term "crime of violence" includes the offense of "robbery," as well as several other enumerated offenses. U.S.S.G. § 4B1.2(a)(2). Moreover, the Sixth Circuit's recent opinion in *Chaney v. United States* makes clear that unarmed robbery under Michigan law includes as an element the use, attempted use, or threatened use of physical force against the person of another. 917 F.3d 895, (6th Cir. 2019), cert. denied, 140 S. Ct. 265 (2019) (holding that Michigan unarmed robbery "is categorically a violent felony" under the elements clause of the Armed Career Criminal Act).

### 2.   Defendant's 2011 Conviction for Delivery/Manufacture of Less Than 50 Grams Cocaine is a Controlled Substance Offense

On July 18, 2011, the defendant was convicted in the 17th Circuit Court of Michigan of delivery/manufacture less than 50 grams of cocaine, in violation of Michigan Compiled Laws § 333.7401(2)(a)(iv). (R.1106: PSR, PageID.6554.) The defendant was sentenced to a term of 18 months to 20 years in prison. (*Id.*)

In *Havis*, the Sixth Circuit invalidated the Guidelines commentary that defined a controlled substance offense to include conspiracy and attempt to commit such an offense, holding that the Sentencing Commission had overstepped its authority by adding to the guideline text rather than interpreting it. 927 F.3d at 386-87. After invalidating the commentary, the court considered whether a Tennessee conviction for drug delivery qualified as a controlled substance offense. Because the Tennessee statute defined "delivery" to include "attempted transfer" of drugs, the defendant had argued that "it encompassed the mere attempt to sell cocaine," and was thus not a controlled substance offense. *Id.* at 384. Crucially, in *Havis*, the

"parties agree[d]" that "attempted delivery of a controlled substance" was the least culpable conduct covered by the statute. *Id.* at 385. The court held that "[t]he Guidelines' definition of 'controlled substance offense' does not include attempt crimes," and, accordingly, that Havis's Tennessee conviction was not a controlled substance offense. *Id.* at 387.

The defendant argues in her sentencing memorandum that her case is legally indistinguishable from *Havis* because "Michigan defines 'delivery' to include attempted deliveries." (R.1010: Def. Sent. Memo., PageID.6658–6659.) The defendant's argument fails because her case is materially distinguishable from *Havis*. Here, the government is *not* conceding that the least culpable conduct the Michigan statute covers is attempted delivery. Rather, the Michigan delivery/manufacture statute is the functional equivalent of 21 U.S.C. § 841, in that it punishes completed delivery rather than separately charged attempt. Accordingly, *Havis* does not apply and the PSR correctly classified the defendant's 2010 conviction as a controlled substance offense.

After the en banc Sixth Circuit issued its opinion in *Havis*, the government moved for reconsideration, which the Court denied. *United States v. Havis*, 929 F.3d 317 (6th Cir. 2019) (en banc). Judge Sutton issued an opinion concurring in the denial. *Id.* at 318 (Sutton, J., concurring). Judge Sutton addressed the concern that the Tennessee statute's definition of delivery, which includes attempted transfers, is functionally equivalent to the federal definition of "distribution" in the Controlled Substances Act, which defines distribute as "to deliver" and deliver as "the actual,

constructive, or *attempted* transfer of drugs." *Id.* at 319 (quoting 21 U.S.C. § 802(11), 802(8)) (internal quotation mark omitted). Judge Sutton explained that there was a difference between the offense of distribution of drugs by attempting to transfer drugs and the separate offense of attempted distribution. *Id.* "The two constitute distinct offenses, one greater and one lesser, one complete and one attempted." *Id.* (citing *Costco v. United States*, 904 F.2d 344, 348 (6th Cir. 1990)). Judge Sutton explained that Congress had codified the latter in 21 U.S.C. § 846, which incorporates the well-established legal definition of attempt liability. *Id.* However, in defining the substantive crime of distribution, Congress had used the ordinary meaning of attempted transfer, not the legal term-of-art meaning. *Id.* He continued, "[w]hen someone attempts to transfer drugs in the ordinary sense, he has distributed drugs and violated § 841; but when someone attempts to distribute drugs in the legal sense, he has attempted only to distribute (or attempted to attempt to transfer) drugs and violated § 846." *Id.*

In striking down the guidelines commentary incorporating attempt crimes, then, the en banc Court had only held that legal attempts, such as those charged under § 846, did not qualify as controlled substances offenses. *Id.* at 319-20. In Judge Sutton's view, attempts in the ordinary sense that constitute completed delivery offenses, such as those charged under § 841 alone, still qualify as controlled substance offenses after *Havis*. *Id.* at 320 ("I agree that it would be bizarre if violating the primary provision of the Controlled Substances Act turned out not to be a controlled

substance offense. But that won't be the case, as just shown. Only attempted drug crimes, under § 846 or state analogues, face that possibility.").

Judge Sutton noted that this reasoning could potentially be applied to hold that the Tennessee statute at issue in *Havis* was, in fact, a controlled substance offense, but explained that the government had failed to argue that the defendant's conviction was a completed offense, rather than a legal attempt. *Id.* (Indeed, as stated above, the government had conceded that the least culpable conduct was attempted distribution. *See Havis*, 927 F.3d at 385.)

Judge Sutton's concurrence is highly persuasive. The Sixth Circuit has previously determined that § 841(a)(1) qualifies as a "controlled substance offense" under the guidelines definition in U.S.S.G. § 4B1.2. *See, e.g.*, *United States v. Doxey*, 833 F.3d 692, 709-10 (6th Cir. 2017) (affirming district court's application of career offender enhancement where a § 841(a)(1) conviction was the base offense). There is no indication in *Havis* that the Sixth Circuit intended to overrule this precedent. Indeed, this result accords with common sense—as Judge Sutton stated, "it would be bizarre if the primary provision of the Controlled Substances Act turned out not to be a controlled substance offense." *United States v. Havis*, 929 F.3d at 320 (Sutton, J., concurring in denial of reconsideration).

Applying Judge Sutton's analysis, *Havis* prohibits only attempted drug crimes under § 846 or state analogues from qualifying as controlled substance offenses. Thus, as applied to Michigan law, *Havis* means only that a violation of a Michigan

drug offense attempt statute would not qualify as a controlled substance offense.[5] The defendant does not have a prior conviction for violating an attempt statute. Rather, her prior conviction is for delivery/manufacture of cocaine, in violation of Mich. Comp. Laws § 333.7401(2)(a)(iv).  (R.1106: PSR, PgeID.6556.)  Under Michigan law, "delivery" is defined as "the actual, constructive, or attempted transfer" of a controlled substance.  *Id.* § 333.7105(1). It is true that this language is similar to the Tennessee statute in *Havis*. However, as Judge Sutton noted, it is also equivalent to the Controlled Substances Act definition of "distribution" for purposes of 21 U.S.C. § 841(a)(1). Both statutes encompass "delivery" of a controlled substance and define delivery to include "actual, constructive, or attempted transfer." The statutes thus include attempts to transfer in the ordinary sense—those that constitute completed deliveries. However, neither Mich. Comp. Laws § 333.7401 nor 21 U.S.C. § 841(a)(1) encompasses attempted deliveries in the legal sense. To hold otherwise would lead to an absurd result—that distribution of a controlled substance in violation of 21 U.S.C.

---

[5] For example, Mich. Comp. Laws § 333.7407a, which decrees that a "person shall not attempt to violate" Michigan's Controlled Substances Act.  *Cf.* 21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense . . . .").  In addition, many cases show defendants being convicted of "attempted delivery" under the general attempt statute, Mich. Comp. Laws § 750.92.  *See, e.g.*, *United States v. Taylor*, 301 F. App'x 508, 518 (6th Cir. 2008); *People v. Fabiano*, 482 N.W.2d 467, 468 (Mich. Ct. App. 1992); *People v. Eaton*, 459 N.W.2d 86, 87 (Mich. Ct. App. 1990); *People v. Schwartz*, No. 291313, 2010 WL 4137453, at *7 (Mich. Ct. App. Oct. 21, 2010) (unpublished); *People v. Hernandez*, No. 247705, 2004 WL 2239482, at *1 (Mich. Ct. App. Oct. 5, 2004) (unpublished); *People v. Flores*, No. 180775, 1996 WL 33364199, at *1 (Mich. Ct. App. May 24, 1996) (unpublished); *People v. Brodeur*, No. 169685, 1996 WL 33364537, at *1 (Mich. Ct. App. Apr. 26, 1996) (unpublished).  *But see People v. Wright*, 253 N.W.2d 739, 740-41 (Mich. Ct. App. 1977) (holding that "attempted delivery" is not an offense under Michigan law); *Wayne Cty. Prosecutor v. Detroit Recorder's Court Judge*, 442 N.W.2d 771, 773 (Mich. Ct. App. 1989) (same).

§ 841(a)(1), the primary provision of the controlled Substance Act, would not constitute "an offense . . . that prohibits . . . distribution . . . of a controlled substance," U.S.S.G. § 4B1.2(b). If the Sixth Circuit had meant to overrule binding precedent holding that § 841(a)(1) is a controlled substance offense, it would have said so explicitly.

As the Michigan statute at issue in this case is the functional equivalent of § 841(a)(1), it is a controlled substance offense for the same reason Judge Sutton opined that § 841(a)(1) remains a controlled substance offense after *Havis*—because the least culpable conduct is delivery, not attempted delivery. The defendant's objection to the nature of the defendant's 2010 conviction as a controlled substance offense should be overruled.

## IV. Drug Quantity Attributable to Defendant

The government's position is that the defendant is directly responsible for between 3.5 and 5 kilograms of cocaine, for a base offense level of 28. The defendant argues that she should only be held responsible for the 1 kilogram of cocaine that Howard Mayfield got from Craig James on May 11, 2018, because that amount was reasonably foreseeable to her. (R.1010: Def. Sent. Memo., PageID.6659–6660.)

The defendant's focus on reasonable foreseeability of jointly undertaken criminal activity is a red herring: the defendant is responsible for over 4.5 kilograms of cocaine under U.S.S.G. § 1B1.3(A) because of acts that she herself committed and willfully caused. "[W]here a defendant is part of a jointly undertaken criminal activity involving drugs, the defendant is accountable for ***all quantities of***

***contraband with which [she] was directly involved*** and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that [she] jointly undertook.'" *Young*, 847 F.3d at 367 (internal quotations and citation omitted) (emphasis added). The defendant herself was the intermediary between Mayfield and James for five cocaine transactions totaling 4.5 kilograms of cocaine, as well as one deal that involved a half pound of marijuana. That the defendant did not know the exact quantities of each deal between Mayfield and James is irrelevant when she was the one arranging the deals between the two men by facilitating three-way calls. The quantities of drugs involved in the very deals the defendant facilitated are directly attributable to her under § 1B1.3(a)(1)(A).

Even under the criteria of § 1B1.3(a)(1)(B), the defendant is responsible for over 4.5 kilograms of cocaine. Conduct of others "that . . . . is within the scope of, in furtherance of, and reasonably foreseeable in connection with jointly undertaken criminal activity—is relevant conduct under this provision for which a defendant may be held accountable." *United States v. Donadeo*, 910 F.3d 886, 894 (6th Cir. 2018) (internal quotations omitted). The defendant admits that the 1 kilogram of cocaine Mayfield got from James on May 11, 2018 was reasonably foreseeable to her. (R.1010: Def. Sent. Memo., PageID.6660.) And she knew exactly what James and Mayfield were doing during each of the subsequent three-way calls she facilitated between the men: setting up large-quantity cocaine deals.

## V.    Defendant is Not Entitled to Mitigating Role Adjustment

A mitigating role adjustment is only appropriate where the defendant is "substantially less culpable than the average participant in the criminal activity." *United States v. Bragg*, 762 Fed. App'x 298, 301 (6th Cir. 2019) (unpublished). The defendant argues that she is entitled to a mitigating role adjustment under U.S.S.G. § 3B1.2, claiming she became involved "because of a familial relationship: namely her brother" because she "fear[ed] for her brother's safety" following Ryan Brown's disagreement with Mayfield about getting shorted cocaine. (R.1010: Def. Sent. Memo., PageID.6659–6662.)

The defendant is significantly downplaying her role in the conspiracy by suggesting that she only became involved because she was afraid for Ryan Brown's safety. The text messages between Ryan Brown and the defendant, recovered from Ryan Brown's phone, (Exhibit 1), show that both the defendant and Ryan Brown were involved in selling cocaine before Ryan Brown and Mayfield had a dispute about shorted cocaine. Both Ryan Brown and Yvette Brown were supplied by Mayfield and were affected when the shipment of cocaine was intercepted in Arkansas on March 13, 2018. Moreover, as discussed above, the defendant had her own additional cocaine source—Trebarius McGee—who she not only failed to mention during her proffers with the government, but adamantly denied dealing with.

With respect to Craig James, Ms. Brown did not merely "perform a limited function in connecting three way calls between two men who had already conducted several transactions with each other." (*Id.*, PageID.6661.) Transcripts for several calls

involving the defendant were prepared for the trial of codefendants in October 2019, and are attached as Exhibit 3. Additionally, line sheets of intercepted text messages and summarized calls between the defendant and Howard Mayfield are attached as Exhibit 4. The transcripts and line sheets, as well as the text messages between Ryan Brown and the defendant (Exhibit 1) reflect that the defendant was the literal go-between for James and Mayfield, and was a central player in the cocaine trafficking conspiracy in May 2018. The defendant also connected Mayfield with codefendant Stephawn McFadden, at James's request, so McFadden could get cocaine from Mayfield to resell. (R.1006: PSR, PageID.6514). And the defendant and Mayfield discussed the quality of cocaine Mayfield received from James. (*Id.*, PageID.6514.)

Finally, the defendant's own cocaine and crack cocaine dealing—whether alone or in conjunction with Ryan Brown—was not infrequent, and the quantities were not minimal:

- **September 18, 2017** – 1 ounce
- **March 15, 2018** – 1 ounce
- **March 16, 2018** – .1 ounce (2.8 grams)
- **March 18, 2018** – 2 ounces
- **March 20** – 1 ounce
- **March 23, 2018** – 1 ounce
- **March 24, 2018** – .5 ounce
- **April 3, 2018** – .5 ounce
- **April 7, 2018** – unknown
- **May 12, 2018** – unknown
- **May 14, 2018** – 1 ounce
- **May 20, 2018** – 1 ounce
- **May 21, 2018** – 1 ounce

The defendant's role in the conspiracy was not minimal and the Court should overrule her objection to PSR.

**VI.** **18 U.S.C. § 3553(a) Sentencing Factors**

In addition to determining the proper advisory guidelines range, the Court must also consider the sentencing factors under 18 U.S.C. § 3553(a) when imposing and explaining its sentence. *United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011) (citing *United States v. Alexander*, 543 F.3d 819, 822 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007))). The Court must impose a sentence that is sufficient, but not greater than necessary, to comply with the aims of sentencing as set forth in 18 U.S.C. § 3553(a).

The defendant's offense is a serious one: she played a central role in ensuring that Howard Mayfield's cocaine-trafficking organization had a steady supply. In addition to her role as an intermediary between supplier James and distributor Mayfield, the defendant dealt cocaine and crack cocaine to customers of her own. She did so over a lengthy period—from at least as early as September 18, 2017, when Howard Mayfield called "Re Re" to get cocaine to supply to the undercover officer, to May 24, 2018, when she was charged in this case. Importantly, the defendant's involvement in the conspiracy was not altruistic—she sold cocaine to make money. Mayfield was her preferred supplier because he was cheaper than Terbarius McGee, a/k/a "Stutters," as evidenced by the text exchange below (from Exhibit 1) between Ryan Brown and Yvette Brown:

| From<br>To<br>+16165701663<br>Re<br><br>Direction:<br>Outgoing | 3/23/2018<br>2:30:04 PM(UTC-4) | Delivered:<br>3/23/2018<br>2:30:04 PM(UTC-4) | Sent | Why you ask if howie had it stutter out |
| To<br>From<br>+16165701663<br>Re<br><br>Direction:<br>Incoming | 3/23/2018<br>2:30:52 PM(UTC-4) | Delivered:<br>3/23/2018<br>2:30:47 PM(UTC-4) | Read | Nah he not out howie just cheaper |
| From<br>To<br>+16165701663<br>Re<br><br>Direction:<br>Outgoing | 3/23/2018<br>2:31:04 PM(UTC-4) | Delivered:<br>3/23/2018<br>2:31:04 PM(UTC-4) | Sent | Oh lol |

The need for the sentence imposed to promote respect for the law is an especially important factor here, because the defendant's criminal history reflects disrespect for the law and courts, albeit in the defendant's younger years. As outlined in the PSR, (R.1006: PSR, PageID.6548–6558), before the age of 30, the defendant's track record in the courts was abysmal:

- 12/20/2000:  probation violation
- 8/31/2000:  failure to appear for show cause hearing
- 3/17/2000:  failure to appear for arraignment
- 2001:  absconder from probation; revocation of probation
- 10/19/2000:  failure to appear for pretrial conference
- 2/1/2001:  failure to appear for arraignment
- 3/19/2001:  failure to appear for arraignment
- 5/15/2001:  failure to appear for arraignment
- 2/5/2002:  failure to appear for arraignment
- 4/1/2002:  failure to appear for arraignment
- 6/11/2002:  failure to appear for arraignment
- 6/14/2002  failure to appear for arraignment
- 7/12/2002  failure to appear for arraignment
- 3/31/2005:  absconder from parole
- 4/7/2004:  failure to appear for show cause hearing
- 2/9/2006:  failure to appear for show cause hearing
- 10/19/2007:  committed new offense while on probation
- 6/3/2009:  failure to appear for show cause hearing
- 6/24/2009:  failure to appear for arraignment
- 8/21/2009:  failure to appear for arraignment
- 1/21/2010:  failure to appear for pretrial conference

On the positive side, the defendant did self-surrender in this case and has appeared at all of her required court hearings. She has generally been compliant while on bond, with the exception of maintaining communication with Ryan Brown against the court's order (and in contravention of her purported cooperation with the government).

The defendant's criminal history before the age of 30 was serious, including three felony drug convictions (PSR ¶¶ 159, 165, 188), and a felony conviction for unarmed robbery. The facts underlying the robbery conviction were not summarized in the PSR but are contained in the arrest report, which has been provided to defense counsel and will be offered as an exhibit at sentencing. According to witnesses, on June 17, 2007, the defendant and a group of woman appeared unexpectedly at the residence of the victim. The defendant went into the residence and attempted to collect $350 that belonged to the defendant and/or the defendant's boyfriend. The defendant proceeded to hit the victim with a metal object, striking the victim's face and the back of the victim's head. Law enforcement observed that the victim had blood on her face and several small lacerations around her nose and eyes. When the defendant spoke with law enforcement she admitted assaulting the victim, but denied using a weapon. The defendant failed a polygraph examination, which indicated deceit when the defendant denied having a weapon during the assault. When law enforcement confronted the defendant about the results of the polygraph examination, the defendant stated several times, "She stole my money so I went there to whoop her ass!" The defendant subsequently admitted that she was holding a

crowbar when she approached the victim's residence, but insisted that she gave it to a friend when she went inside and said she never used it to commit the assault.

The defendant's history and characteristics reflect that has struggled with substance abuse for years, including using cocaine four times a week from the age of 30 until June 2018. She appears willing and interested in substance abuse treatment. The defendant has strong family support as evidenced by the letters submitted on her behalf. The government recognizes the gravity of grief and trauma that the defendant has experienced in the past year, including the tragic death of her son and her daughter-in-law's cancer diagnosis. It is evident that the defendant's family depends on her support and strength. There is no question that the defendant is remorseful for the fact that her loved ones will be without her support and care while she serves a significant prison term for of her involvement in this cocaine conspiracy.

Finally, deterrence is an important factor in this case, both for the defendant specifically, and for others in the Western District of Michigan who are involved in or contemplating drug trafficking.

## CONCLUSION

For the above-stated reasons, the government respectfully recommends that the Court find that the defendant's guidelines range—without the Career Offender enhancement—is 84 to 105 months' imprisonment. Should the court sentence the defendant as though she were a Career Offender, based on a categorical policy-based disagreement with the guidelines or as a matter of the sentencing factors set forth in 18 U.S.C. § 3553, her guidelines range would be 188–235 months' imprisonment.

The government's position is that the defendant should be treated as a Career Offender because *Havis* was wrongly decided. It is arbitrary and "bizarre," to use Judge Sutton's word, to apply the Career Offender provision only to defendants who are convicted of substantive felony drug offenses and not to defendants who are convicted of conspiring to commit the very same offenses—especially where both convictions carry the same penalties under federal law. The government respectfully recommends that a sentence within the career offender guidelines range is sufficient, but not greater than necessary, to comply with the aims of sentencing as set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: December 4, 2019                    */s/ Kate Zell*
                                           KATE ZELL
                                           DANIEL T. MCGRAW
                                           Assistant United States Attorneys
                                           P.O. Box 208
                                           Grand Rapids, Michigan 49501
                                           (616) 456-2404